McCROSKEY, D.B.A. NORTHBROOK CONSTRUCTION CO., APPELLEE, *v.* THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as McCroskey *v.* State (1983), 8 Ohio St. 3d 29.]

(No. 82-1649—Decided December 14, 1983.)

*Messrs. Wilkowski, Bloom & Wilkowski, Mr. Keith A. Wilkowski, Mr. R. Kemp Lindsey* and *Mr. Charles E. Bloom,* for appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Stephen P. Samuels,* for appellants.

*Per Curiam.* The issue presented by this case is whether the state of Ohio is obliged under the doctrine of promissory estoppel to compensate Dewey A. McCroskey for his efforts in attempting to arrange the construction and lease of office space to the state. This court concludes that the elements of promissory estoppel have not been satisfied in the instant case. Because of that conclusion, it is unnecessary to consider the state's contention that the doctrine cannot apply against the state.

This court has had occasion to consider what was characterized as "that nebulous doctrine" of promissory estoppel. *Talley* v. *Teamsters Local No. 377* (1976), 48 Ohio St. 2d 142, 146 [2 O.O.3d 297]. There, the rule of the Restatement of the Law, Contracts 2d (1973), Section 90, was adopted that:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Thus, in order for McCroskey's claim to succeed the threshold element of a promise must be met. The state must have made a promise to McCroskey which should have reasonably been expected to induce action. It is significant that the trial court not only found no proof of a contract of any kind between

the parties but further found no promises by the state. The court of appeals determined that the state had made such promises but neglected to articulate what they were.

McCroskey alleges that several promises were made to him, all of which induced his detrimental reliance. These promises are supposedly manifested by repeated representations that the state was going to move certain departments from their current quarters, in selecting McCroskey as the developer to build the special purpose building, in agreeing to all the terms of the proposed lease, and in mailing the letter of intent and proposed leases for McCroskey's signature.

None of these alleged representations rises to the level of the sort of promise necessary to invoke promissory estoppel. Whether or not the state promised to abandon its present quarters, it is elementary that the departments involved had to have satisfactory facilities to move into. McCroskey has never demonstrated that he could supply quarters capable of fulfilling the state's requirements. The trial court noted that at the time of the state's withdrawal from the deal McCroskey had neither the required zoning nor the building permit to proceed. Additionally, McCroskey had been unable to submit a proposal which satisfied the state's requirement of one hundred forty-two vehicle parking spaces. Thus, McCroskey had not exhibited the ability to proceed in time to assure continued housing of the state's agencies.

Furthermore, McCroskey's assertion that the state made a promise to him by selecting him as the developer is incorrect. The state approached several potential developers in the Bowling Green area with its requirements. As time went on, each of these other developers withdrew from further consideration. The department never entered into or accepted any bids from McCroskey. Rather, the parties were engaged in the protracted process of negotiating a future arrangement.

This argument of selection is intertwined with the mailings of the letter of intent and proposed leases and the supposed agreement to the terms of the lease. However, any reasonable interpretation of the letter of intent and proposed leases compels the conclusion that these documents merely represent that on the occurrence of future eventualities an agreement would be entered into on behalf of the state. The letter of intent expressly stated that it "* * * is not a contract or legal obligation of the State since, under the law, the only contract the State can enter into would be a lease executed by the Director of the Department of Administrative Services subsequent to the certification of rental funds and approval of the lease, as to form, by the Attorney General of Ohio and the availability of the premises for actual occupancy by the Lessee." The letter of May 4, 1979, referring to the proposed new lease, stated that "* * * NO FUNDS ARE TO BE PROCESSED FOR PAYMENT until the lease is fully executed and notice of occupancy has been given by this office."

It is therefore apparent that there were no promises made by the state which should reasonably have expected to induce reliance by McCroskey. The communications between McCroskey and the department were in the nature

of preliminary negotiations subject to formal approval and acceptance. There existed an executory arrangement, the hazards of which were open, obvious and ongoing. McCroskey pursued an opportunity for an advantageous business proposal knowing fully the risks attendant to such ventures. This pursuit required the expenditure of his own time and funds. Now that the deal has fallen through, McCroskey wants the state to absorb responsibility for the risks he undertook. Such a proposition, unaccompanied by an identifiable promise, does not rise to a right of recovery.

Because this court finds no promise made by the state to McCroskey it is unnecessary to consider the additional elements required for promissory estoppel. It is also unnecessary to presently consider the further question of whether the doctrine of promissory estoppel can ever properly operate against the state.

For these reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.