# DANIEL

### v.

# UNIVERSITY OF CINCINNATI.

Court of Claims of Ohio.

No. 99–13576.

Decided July 19, 2001.

2

*Robert B. Newman,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Randall W. Knutti,* Assistant Attorney General, for the state.

HOLLY TRUE SHAVER, Magistrate.

This case was tried to a magistrate of the court on the issues of liability and damages. Plaintiff alleges three causes of action in her complaint: (1) promissory estoppel, (2) failure to follow guidelines and procedures in the hiring process, and (3) sex discrimination. At trial, plaintiff dismissed her sex discrimination claim. Defendant denies liability on the remaining claims.

In 1991, plaintiff, Annemarie Daniel, obtained a master's degree in communication from defendant, University of Cincinnati ("UC"), a state institution of higher education created pursuant to R.C. 3361.01. Dr. Steve Depoe was plaintiff's thesis advisor and the director of graduate studies. In April 1998, plaintiff was employed in a tenure track position as an assistant professor of communication at the University of Missouri–Rolla. On April 17, 1998, plaintiff received an e-mail message from Depoe advising her of an employment position at UC. The e-mail message stated the following:

"I want to inform you that our department has a visiting asst. prof. line open for Fall 1998, which will convert to a permanent tenure track line for Fall 1999. The job description is below. * * *

"University of Cincinnati seeks applicants for a *one-year visiting assistant professor position* in the area of rhetoric and public communication. Position begins September 1, 1998. *We seek applicants with expertise in the areas of rhetoric, argumentation, and environmental communication studies.* * * *

"Qualifications: ABD earned by August 31, 1998, and evidence of scholarship and teaching effectiveness. * * *

"If you are still in the job market, I encourage you to apply for this position. * * *" (Emphasis added.)

On April 28, 1998, plaintiff submitted an application for the position. On May 5, 1998, Depoe sent plaintiff another e-mail message stating that her file was complete and that defendant had received twenty-nine applications for the position. In addition, Depoe informed plaintiff of another available faculty position as an adjunct assistant professor that was renewable but nontenurable. Depoe added that a person in that position could get promoted to adjunct full professor over time. Plaintiff also applied for that position. Ultimately, plaintiff was offered the one-year visiting assistant professor position, but not the adjunct position. She received a letter dated July 1, 1998, signed by Dean Joseph A. Caruso, that stated the following:

"Upon the recommendation of Professor Steve Depoe, it is my pleasure to offer you the position of Visiting Assistant Professor of Communication effective September 1, 1998, through August 31, 1999, at a salary of $28,000.

"It is our hope that you will accept this offer and join us at the University of Cincinnati. Your interest in the academic mission of the Department of Communication is appreciated. Should you decide to accept this position, please sign below and return this letter at your earliest convenience. Should you find it necessary to postpone your decision, I would appreciate knowing that also."

On July 21, 1998, plaintiff signed and returned the letter to defendant.

4

In October 1998, defendant posted another job description, which stated the following:

"University of Cincinnati seeks applicants for a *full-time tenure track position* at the assistant professor level in the area of rhetoric and public communication. Position begins September 1, 1999. *We seek an outstanding individual whose scholarship can actively advance the agenda of the Center for Environmental Communication Studies.* * * *

"Qualifications: Ph.D. earned by August 31, 1999, publications, and evidence of teaching effectiveness. * * *" (Emphasis added.)

Plaintiff applied for the tenure track position, but was not interviewed. Eventually, the position was awarded to another applicant, John Delicath.

Plaintiff asserts that she applied for the visiting professorship based upon Depoe's statements that it would convert into a tenure track position in the Fall of 1999 and that she would be considered for the tenure track position. She further contends that, in reliance upon those statements, she resigned from her tenure track position at the University of Missouri–Rolla and accepted the position at UC. Plaintiff also asserts that after she accepted the position, another professor at UC, Cynthia Berryman–Fink, stated that the department had a good record of retaining visiting assistant professors in tenure track positions.

In addition, plaintiff contends that Depoe promised her a recommendation letter for the tenure track position, but that the letter was never submitted to the search committee, and that her application was not seriously considered because of this omission. Plaintiff alleges that had she been fairly and fully considered, she would have been awarded the tenure track position.

Defendant maintains that the one-year position did convert to a tenure track position and that plaintiff was fairly and fully considered for the position. Furthermore, defendant argues that plaintiff could not have reasonably relied upon any promises made by Depoe and Berryman–Fink because they lacked the statutory authority to make employment-related decisions.

At trial, plaintiff explained why she accepted the visiting professor position. She stated:

"I was given a lot of unofficial assurances. Nobody came right out and said, you will absolutely get this [the tenure track position], and, of course, I didn't expect them to, but I think I had very good reason to believe that I would get it. And I think that other people were giving me those same messages. * * * I really was confident that I would at least get an interview, if not get the tenure track position. So I did not think—I knew it was a gamble. I thought it was a very, very safe gamble."

Plaintiff admitted that she understood that (1) the position itself would convert into a tenure track position, (2) the person in the visiting position would not automatically be awarded the tenure track position, (3) the visiting assistant professor position would terminate in one year, (4) a national search would be conducted for the tenure track position, and (5) a number of people would apply for the tenure track position. Plaintiff further stated that Berryman–Fink never told her that defendant's past practice of retaining visiting professors for tenure track positions was guaranteed.

■ Promissory estoppel is defined as follows: " 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " *McCroskey v. State* (1983), 8 Ohio St.3d 29, 30, 8 OBR 339, 340–341, 456 N.E.2d 1204, 1205, quoting, Restatement of the Law 2d, Contracts (1973), Section 90.

In order for plaintiff's claim of promissory estoppel to succeed, the threshold element of a promise must be met. Defendant must have made a promise to plaintiff that should have reasonably been expected to induce action. *McCroskey*.

■ Plaintiff argues that defendant assured her, barring unforeseen circumstances such as fiscal emergencies, the appearance of an all-star candidate, or the discovery of teaching deficiencies, the job would probably have been hers. The court finds that the written contract for the visiting professorship is clear and unambiguous. Under the contract, plaintiff received a one-year, nontenure track position as a visiting professor. Consequently, any statements that Depoe made to plaintiff regarding the future tenure track position before she signed the one-year contract cannot be admitted to vary the terms of her contract. With regard to plaintiff's promissory estoppel claim, the court further finds that even if Depoe and Berryman–Fink made the comments alleged by plaintiff, they do not rise to the level of a promise of future employment. Plaintiff also conceded that she was not promised the tenure track position.

■ Furthermore, the court finds that even if Depoe and Berryman–Fink had promised plaintiff the tenure track position, it was not reasonable for plaintiff to have relied on such promises. R.C. 3361.03 states: "The board of trustees of the university of Cincinnati shall employ, fix the compensation of, and remove the president and such number of professors, teachers, and other employees, as may be deemed necessary." Thus, the board of trustees has the sole authority to approve employment contracts for UC. Any representations made by Depoe or Berryman–Fink would be contrary to express statutory law, and, thus, promissory estoppel does not apply. See *Marbury v. Cent. State Univ.* (Dec. 14, 2000),

Franklin App. No. 00AP–597, unreported, 2000 WL 33282458. Therefore, plaintiff's first claim must fail.

Plaintiff's second claim is that defendant failed to abide by its own guidelines and protocols in the hiring process. However, she points to no specific guidelines or policies to support that contention. Plaintiff argues that, when she was hired for the visiting assistant professor position, she was hired in preference to Delicath. However, when the applicants for the tenure track position were considered, Delicath was interviewed and she was not. She also argues that Depoe promised to submit a recommendation letter for her but did not, and that, before she applied for the tenure track position, Jerry Jordan, chairman of the search committee, praised Francois Cooren's (another applicant) qualifications and told plaintiff, "Even if you don't get this position, there are always openings in the evening college."

At trial, the records from the search committee for the tenure track position were examined. Plaintiff submitted her application and was considered along with twenty-eight other applicants. Three individuals from this group, Barbara Willard, John Delicath, and Kathi Pauley, received interviews. Defendant's first choice, Willard, was offered the position but declined it. Defendant's second choice, Delicath, accepted the job offer. Plaintiff testified that she had publication experience equal to Delicath's and that she had the required Ph.D., but that she had no experience in environmental communication. A review of Delicath's qualifications shows that he had not obtained his Ph.D. at the time of the interview, but that he had experience in environmental communication. Plaintiff did not offer evidence to show that she was more qualified than Willard or Pauley.

A trial court is required to defer to academic decisions of a college unless it perceives " 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.' " *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 308, 604 N.E.2d 783, 788, quoting *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532. "The standard of review is not merely whether the court would have decided the matter differently but * * * whether the faculty action was arbitrary and capricious." *Bleicher, supra,* citing *Univ. of Missouri Bd. of Curators v. Horowitz* (1978) 435 U.S. 78, 91, 98 S.Ct. 948, 955–956, 55 L.Ed.2d 124, 135–136. Based upon the evidence produced at trial, the court cannot conclude that plaintiff received less than a full and fair consideration or that defendant failed to exercise professional judgment in choosing Delicath for the tenure track position.

Plaintiff further testified that, after the search committee began to conduct interviews, Depoe told her that the communication department had re-evaluated its needs and had determined that a position in environmental communication was warranted. The committee used "a demonstrated interest in environmental communication" as its primary criteria, as stated in the job description. The court finds that it is within the university's discretion to make hiring decisions based upon the needs of its departments, and the court must defer to defendant's academic decisions.

Finally, the court finds that while the comments Jordan made to plaintiff may have been unprofessional, they do not alter the fact that each of the three candidates who were interviewed had a demonstrated interest in environmental communication. Given plaintiff's admitted lack of environmental communication experience, the court cannot determine whether the presence or absence of a recommendation by Depoe would have made a difference in the search committee's selection of any candidate. In the final analysis, the court finds that plaintiff has failed to prove any of her claims by a preponderance of the evidence. Judgment is recommended in favor of defendant.

*Judgment recommended for defendant.*

## JUDGMENT ENTRY

Decided–September 10, 2001

RUSSELL LEACH, Judge.

This case was tried to a magistrate of the court. On July 19, 2001, the magistrate issued a decision recommending judgment for defendant.

Civ.R. 53(E)(3)(a) states: "Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision." Plaintiff has not filed an objection to the decision.

Upon review of the record and the magistrate's decision, the court determines that there is no error of law or other defect on the face of the magistrate's decision. Therefore, the court adopts the magistrate's decision and recommendation as its own. Judgment rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment for defendant.*

8

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.