DECISION AND JUDGMENT ENTRY
This case is before the court following the Williams County Court of Common Pleas' December 22, 2000 judgment which granted defendant-appellee Steve Goltare's motion for summary judgment. For the reasons that follow, we reverse the decision of the trial court.
The undisputed facts of this case are as follows. Westar Plastics ("Westar") is an injection molding plastics company. Appellant was first involved with Westar in 1996, soon after it formed, when he guaranteed a loan for appellee and helped him acquire a forklift.[1] In July 1997, appellant, Gary Carnahan, took a two-week vacation from his position at General Motors in order to assist appellee, Steve Goltare, in the start-up of the first major Westar job. While he was still employed at General Motors, appellant worked on the Westar job daily without compensation. Thereafter, he left his employment with General Motors to work full-time at Westar at appellee's request.
In October 1999, appellee terminated appellant's association with Westar. Appellee issued appellant a check for $24,000, or ten percent of the 1999 profits of Westar up to that date.
On October 25, 1999, appellant commenced this action for damages stemming from the alleged breach of the partnership agreement by appellee. Appellant filed a second amended complaint on February 28, 2000, claiming breach of the partnership agreement, requesting injunctive relief, claiming detrimental reliance, and claiming that appellee knowingly and intentionally made false statements regarding appellant.[2]
Appellee filed a motion for summary judgment on September 15, 2000, and, with leave of court, filed a memorandum in support of his motion for summary judgment on November 13, 2000. Appellant filed his memorandum in opposition on December 4, 2000.[3]
On December 22, 2000, the trial court granted appellee's motion, finding that appellant's complaint alleged breach of a promise to form a partnership in the future, rather than an actual breach of a partnership agreement. The court concluded that there had been no meeting of the minds as to the essential elements needed to form a partnership. Appellant filed a timely notice of appeal.
Appellant sets forth the following assignments of error:
 "I. THE COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON THE COURTS [SIC] FINDING THAT PLAINTIFF'S CLAIM `. . . APPEARS TO BE A BREACH OF A PROMISE TO FORM A PARTNERSHIP RATHER THAN BREACH OF AN ACTUAL PARTNERSHIP AGREEMENT . . .'
 "2. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION IN PLAINTIFF'S SECOND AMENDED COMPLAINT."
In his first assignment of error, appellant argues that the trial court erred in determining that appellant's complaint set forth a claim for "breach of a promise to form a partnership" rather than breach of an actual partnership. Appellant further argues that the court improperly weighed the evidence and erroneously disregarded evidence favorable to appellant.
We review this assignment or error de novo. Grafton v. Ohio Edison,Co. (1996), 77 Ohio St.3d 102, 105. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when he or she demonstrates "* * * that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607,617. In reviewing a motion for summary judgment, the court must construe the evidence in a light most favorable to the nonmoving party. Civ.R. 56(C).
R.C. 1775.05(A) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit * * *." While there is no bright-line test to establish the existence of a partnership, R.C. 1775.06(C) and (D) provide courts with guidelines. They state the following:
 "(C) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
 "(D) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
"(1) As a debt by installments or otherwise;
"(2) As wages of an employee or rent to a landlord;
 "(3) As an annuity to a widow or representative of a deceased partner;
 "(4) As interest on a loan, though the amount of payment vary with the profits of the business;
 "(5) As the consideration for the sale of good will of a business or other property by installments or otherwise."
In the instant case, we agree with appellant that the first claim for relief in his second amended complaint was, in fact, a claim for breach of a partnership agreement. The claim for relief refers several times to the "partnership agreement" and the loss sustained by appellant resulting from the breach thereof. We must now determine, de novo, whether a genuine issue of material fact remains as to the existence of a partnership.
Appellant testified during his deposition that appellee asked him to be a partner in the business with him and that he agreed. Appellant testified that he and appellee agreed, prior to appellant leaving General Motors, that he would receive twenty percent of the business. Appellee, in his deposition, disputes any form of a partnership agreement. Rather, appellee states that they had discussed that part of his compensation as an "associate" was to be ten percent of the yearly net income of the business. Appellee further indicated that Westar is registered as a sole proprietorship.
Appellant signed as a guarantor on a loan for Westar which was repaid within one year and furnished credit for brief periods of time. Appellant also supplied Westar with a long list of tools and other supplies which were returned during the pendency of this action.
In his deposition, appellant admitted that contracts involving Westar were signed by appellee and/or appellee's wife, but he did testify that he negotiated a contract. Appellant admitted that he was not responsible for hiring, firing or scheduling employees. He did assign employees to various tasks within the workplace. Appellant testified that he and appellee jointly determined the scheduling of the jobs Westar was awarded.
Appellee's half-brother, Mark Carnahan, testified by affidavit that appellee, in August 1999, told him that he was going to make appellant a partner in the business for approximately five years. After five years, we was planning on buying appellant out. Appellant likewise testified that part of the agreement was a five-year commitment and that after such time appellant could have appellee buy him out.
Based upon the foregoing, it is obvious that disputed issues of fact exist as to whether the parties entered into a partnership agreement. Accordingly, appellant's first assignment of error is well-taken.
In appellant's second claim for relief, he contends that the trial court erred in granting summary judgment in favor of appellee on his third cause of action, detrimental reliance. Appellee contends that the alleged promises made to appellant were too vague or indefinite to form the basis of a promissory estoppel claim.
As noted by the parties, the claim of detrimental reliance is grounded in the equitable doctrine of promissory estoppel which has been defined as:
 "`A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided by enforcement of the promise.'" Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 146, adopting the Restatement of the Law, Contracts 2d (1973), Section 90. See McCroskey v. State (1983), 8 Ohio St.3d 29, 30.
Thus, in order for appellant's claim to succeed he must first establish that appellee made him a promise which was reasonably expected to induce action. Because we found in our disposition of appellant's first assignment of error that genuine issues remain as to the existence of a partnership, we, likewise, find that genuine issues remain as to the nature of the promise made by appellee.
In establishing promissory estoppel, appellant must also show that he relied on the promise made by appellee. Appellee admitted the following in his deposition:
 "Q: You don't deny that he left General Motors in reliance on the promise you made to him? You don't deny that, do you?
"A: No, I guess not."
Finally, appellant must show that the reliance was reasonable and that he was damaged as a result. It appears that such reliance was reasonable in that appellant believed that he was leaving his employment with General Motors for a better opportunity. Appellant also provided testimony that he was financially damaged by the course of events. Accordingly, appellant's second assignment of error is well-taken.
On consideration whereof, we find that substantial justice has not been done the party complaining, and the judgment of the Williams County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Mark L. Pietrykowski, P.J.
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.
[1] Appellant, for approximately twelve to fifteen years, was appellee's stepfather.
[2] The fourth cause of action, regarding alleged false statements, was voluntarily dismissed by appellant.
[3] Appellant filed his first memorandum in opposition on October 20, 2000 but, after appellee filed his memorandum in support of his motion for summary judgment, appellant was granted leave to respond.