[Cite as *Moellering Industries, Inc. v. Nalagatla*, 2013-Ohio-3995.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

MOELLERING INDUSTRIES, INC.,            :

    Plaintiff-Appellant,            :            CASE NO.   CA2012-10-104

                                     :            O P I N I O N
  - vs -                                            9/16/2013

                                       :

SUCHARITHA NALAGATLA, et al.,            :

    Defendants-Appellees.            :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 10 CV 78063

Robert A. McMahon, 2321 Kemper Lane, Suite 100, Cincinnati, Ohio 45206, for plaintiff-appellant

Peter E. Koenig, 300 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio 45202, for defendants-appellees, Sucharitha Nalagatla and Anil Nalagatla

Phillip F. Cameron, 6539 Harrison Avenue, Suite 124, Cincinnati, Ohio 45247, for defendant-appellee, R.J. Insulation Contractor

Elizabeth A. Carullo, 120 East Fourth Street, Suite 8000, Cincinnati, Ohio 45202, for defendant-appellant, Mortgage Electronic Registration

Edward J. McTigue, 601 Main Street, Third Floor, Cincinnati, Ohio 45202, for defendant-appellee, Garry Brasch Custom Homes, Inc.

Christopher A. Watkins, 500 Justice Drive, Lebanon, Ohio 45036, for defendants, Jim Aumann, Warren County Treasurer and Nick Nelson, Warren County Auditor

Robert H. Welch II, 1019 Main Street, P.O. Box 296, Milford, Ohio 45150-0296, for defendant-appellee, CenterBank

**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, Moellering Industries, Inc. (Moellering), appeals a decision of the Warren County Court of Common Pleas in favor of defendant-appellee, CenterBank, on Moellering's promissory estoppel claim.

{¶ 2} This case arises out of the construction of a new home by Garry Brasch Custom Homes, Inc. (GBCH) for Anil and Sucharitha Nalagatla. To finance construction of the home, GBCH received a construction loan from CenterBank. In November 2009, the Nalagatlas chose Moellering, who does business as Sims Lohman Fine Kitchens and Granite, to provide and install kitchen and bath fixtures for the home. However, GBCH encountered problems when it attempted to secure the fixtures on credit from Moellering. Upon learning of GBCH's construction loan, Moellering's credit manager, James Young, suggested Moellering would accept payment from the construction loan in the form of a two-party check. GBCH agreed to this arrangement and directed Young to contact Cheri Strotman, a senior credit analyst with CenterBank, to work out the details.[1]

{¶ 3} Thereafter, Moellering, GBCH and CenterBank exchanged correspondence regarding this two-party check arrangement. On December 2, 2009, Strotman sent an e-mail to Young stating: "CenterBank will provide a two party check * * * This is at the request of [GBCH]. If you need any additional information or a formal letter on our letterhead please feel free to contact me." Moellering requested a formal letter to confirm the arrangement, and on December 7, 2009, CenterBank sent Moellering a letter which stated: "As per Mr. Brasch's request[,] CenterBank will be able to cut a dual check upon completion to Sims Lohman for the amount of the invoice you provided which is $36,284.49." After receiving this

---

1. There are some references in the record to "Cheri Cantonwine." Cantonwine is Strotman's maiden name. For ease of discussion, we will refer to her as Cheri Strotman.

letter, Moellering was satisfied that it would be paid and proceeded to install the fixtures in the home.

{¶ 4} According to Moellering, the work was completed in May 2010. As a result, Moellering sent final invoices to GBCH. By June 2010, Moellering had still not received payment. Young contacted CenterBank, inquiring about the two-party check. CenterBank informed Young that it had not yet received "paperwork" from GBCH stating that "everything was good" and refused to issue the check at that time. Young then contacted GBCH requesting it authorize the check. Both GBCH and CenterBank informed Young that Moellering should wait until closing for payment, which was scheduled to occur later that month. Moellering, however, did not appear at closing as it was never informed of the actual date of closing or where it was scheduled to take place.

{¶ 5} In July 2010, Young again contacted GBCH and CenterBank for payment. At this time, Young learned that the closing had taken place on June 28, 2010, and all of the funds for the construction of the home had been disbursed at that time. GBCH never paid Moellering for its work. On July 27, 2010, Moellering filed a mechanic's lien on the Nalagatlas' property.

{¶ 6} On September 14, 2010, Moellering filed suit against several parties, including the Nalagatlas and GBCH, to foreclose on the mechanic's lien. Moellering subsequently amended its complaint to include claims for breach of contract and unjust enrichment against GBCH and promissory estoppel against CenterBank.[2] Moellering subsequently released the mechanic's lien against the Nalagatlas' property. On April 19, 2012, Moellering's claims against GBCH and CenterBank came to trial before a magistrate. The magistrate found GBCH liable to Moellering and recommended judgment in the amount of $36,076.80 plus

---

2. Moellering and CenterBank are the only parties to this appeal.

interest at 18 percent per annum from May 14, 2010. However, the magistrate found against Moellering on its promissory estoppel claim and recommended that the claim against CenterBank be dismissed. On September 11, 2012, Moellering filed proper objections to the magistrate's decision with respect to its claims against CenterBank. The trial court, on October 15, 2012, overruled Moellering's objections and adopted the magistrate's decision. Moellering appeals, raising one assignment of error:

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ABUSED ITS DISCRETION BY DISREGARDING EVIDENCE, RE-WRITING EVIDENCE, AND MISAPPLYING THE LAW, AND THEN MAKING FINDINGS INCONSISTENT WITH AND CONTRARY TO THE TESTIMONIAL AND DOCUMENTARY EVIDENCE ADMITTED INTO THE TRIAL COURT RECORD.

{¶ 9} As a preliminary matter, we note that Moellering makes two separate arguments with regard to the proper standard of review in this case. Moellering first challenges the trial court's review of the magistrate's decision. Moellering argues that the trial court's decision should be reversed because the trial court failed to conduct a de novo review of the record as required by Civ.R. 53. Moellering contends that because neither the magistrate nor the trial court mentioned the e-mail from CenterBank on December 2, 2009, this demonstrates that the trial court "simply relied upon the magistrate's findings and failed to conduct an independent review." We find no merit to this argument.

{¶ 10} Civ.R. 53(D)(4)(d) states, in pertinent part: "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." The fact that the trial court does not cite any specific portion of the transcript or any exhibit admitted into evidence in overruling a party's objections to the magistrate's decision does not demonstrate that the court failed to conduct an independent review of the objected matters

as required by Civ.R. 53(D)(4)(d). *Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 17. "While citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so." *Id.* Accordingly, unless the appellant affirmatively demonstrates that the trial court failed to perform its duty under Civ.R. 53(D)(4)(d) to conduct an independent review, an appellate court must presume the regularity of the proceedings below. *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 5 (3d Dist.); *Hartt v. Munobe*, 67 Ohio St.3d 3, 6 (1993).

{¶ 11} In the present case, the record indicates that the trial court conducted an independent review as to the objected matters before overruling the objections and adopting the magistrate's decision. The trial court specifically noted that its "review is independent of the Magistrate's review." Prior to overruling the objections, the trial court, in its written decision, reviewed the facts of the case and then enumerated the reasons why it could not find an unambiguous promise in this case. The fact that the trial court did not specifically cite to an exhibit, namely the December 2, 2009 e-mail, without more, does not demonstrate that the court failed to conduct an independent review as to the objected matters. *See Hampton* at ¶ 17. Moreover, contrary to Moellering's contention, the record indicates that the trial court did in fact consider the e-mail referencing it as "correspondence." In its decision, the trial court stated: "Some correspondence was exchanged among plaintiff, GCH, and CenterBank regarding the two-party check proposal, and ultimately, Mr. Young was satisfied by a letter from CenterBank, dated December 7, 2009." Accordingly, as Moellering has not demonstrated that the trial court failed to conduct an independent review under Civ.R. 53(D)(4)(d), we find the trial court conducted the proper review in reaching its decision on Moellering's objections to the magistrate's decision.

{¶ 12} Moellering next argues that this court should review the trial court's decision

adopting the magistrate's decision for an abuse of discretion. In the past, this court has stated that "a trial court's decision modifying, affirming, or reversing a magistrate's decision is reviewed for abuse of discretion." *Reed v. Morgan*, 12th Dist. Butler No. CA2011-03-065, 2012-Ohio-2022, ¶ 15. However, we recently recognized that "the standard of review turns on the issue presented in the case and not whether the case happened to come before a magistrate." *Id.* at ¶ 15. Accordingly, we now turn to the issues presented in this case.

{¶ 13} In its sole assignment of error, Moellering contends the trial court erred in finding in favor of CenterBank on Moellering's promissory estoppel claim. Essentially, Moellering asserts that the trial court's judgment was against the manifest weight of the evidence.

{¶ 14} When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In addition, "every reasonable presumption must be made in favor of the judgment and the finding of facts." *Volkman* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶ 15} Promissory estoppel is an equitable doctrine for enforcing the right to rely on promises. *Rucker v. Everen Securities, Inc.*, 102 Ohio St.3d 1247, 2004-Ohio-3719, ¶ 6;

*Karnes v. Doctors Hosp.*, 51 Ohio St.3d 139, 142 (1990). In order to establish a claim for promissory estoppel, a party must establish the following elements: "(1) a clear and unambiguous promise was made; (2) upon which it would be reasonable and foreseeable for the party to rely; (3) actual reliance on the promise; and (4) the party was injured as a result of the reliance." *Hitchcock Dev. Co. v. Husted*, 12th Dist. Warren No. CA2009-04-043, 2009-Ohio-4459, ¶ 24, citing *Gus Hoffman Family Ltd. Partnership v. David*, 12th Dist. Clermont No. CA2006-09-076, 2007-Ohio-3968, ¶ 6. A clear and unambiguous promise is one that the promisor would expect to induce reliance. *McCroskey v. State*, 8 Ohio St.3d 29, 30 (1983). "[T]his element is not satisfied by vague or ambiguous references." *Husted* at ¶ 24.

{¶ 16} In arguing that the trial court's decision was against the manifest weight of the evidence, Moellering attacks the trial court's finding that CenterBank did not make a clear and unambiguous promise to pay Moellering. Moellering argues that in determining that there was no clear and unambiguous promise, the trial court ignored evidence and made findings which contradicted the documentary evidence and testimony presented at trial. Specifically, Moellering contends that the trial court failed to consider the December 2, 2009 e-mail and Strotman's testimony regarding this e-mail.

{¶ 17} At trial, Young explained that Moellering typically offers an "open account" where it extends credit allowing the customer to take the product and pay 30 days after delivery. After reviewing GBCH's credit application, Young discovered GBCH was a credit risk and refused to extend GBCH credit as an "open account." Young then proposed Moellering's standard payment option which requires the customer to forward 50 percent of the quoted amount as a down payment, with the remaining balance to be paid five days prior to the delivery of the fixtures. GBCH refused these payment terms.

{¶ 18} Young testified that he learned through GBCH's office manager, Charity Schober, that GBCH had a construction loan with CenterBank. Young suggested he could

contact CenterBank to arrange for payment from the construction loan proceeds. Essentially, Young proposed a two-party check arrangement, whereby CenterBank would issue a check payable to GBCH and Moellering for the payment of Moellering's work. GBCH agreed to this proposal and sent Moellering a letter on November 23, 2009, which stated in part: "[GBCH] will make payment for cabinets and tops with a two party check from Center Bank [sic]. The payment will be made to Moellering Industries from the draw for that phase of construction. Center bank [sic] does not allow draws for deposits; order must be complete to submit a draw." Young explained that this letter was not sufficient in order for Moellering to extend credit to GBCH. As a result, Young contacted Schober and informed her that he needed "something from the bank in writing in order to make this happen." Schober provided Young with the information of the appropriate person to contact at CenterBank.

{¶ 19} Young and Strotman spoke by phone regarding this potential arrangement. Young testified that CenterBank indicated it was agreeable to the two-party check as long as GBCH approved it. Schober sent an e-mail to CenterBank on December 1, 2009, confirming that GBCH approved issuing a two-party check to Moellering as it was a "one time supplier for this job." On December 2, 2009, Strotman e-mailed Young stating:

> CenterBank will provide a two party check to Sims Lohman Fine Kitchen and Granite. This is at the request of Garry Brasch Custom Homes Inc. If you need any additional information or a formal letter on our letterhead please feel free to contact me.

During Strotman's testimony, she admitted that the e-mail stated that the bank would provide a two-party check and agreed that there were "no ifs, ands, or buts in that e-mail."

{¶ 20} However, Young was not satisfied by this e-mail and testified that after receiving this e-mail, he contacted Strotman "and said that I would like something on their letterhead, could she send it to me." In a letter dated December 7, 2009, CenterBank stated: "As per Mr. Brasch's request[,] CenterBank will be able to cut a dual check upon completion

to Sims Lohman for the amount of the invoice you provided which is $36,284.49." After receiving this letter, Young stated that he was satisfied by this letter "[b]ecause it states exactly what we requested that they were guaranteeing payment to us with the two-party check." Thereafter, Young approved GBCH's credit application and directed Moellering's sale representative to place the order for the bathroom and kitchen fixtures.

{¶ 21} After reviewing the evidence, the trial court found that the alleged promise occurred in the December 7, 2009 letter as Moellering claimed to have relied upon this letter. Moellering asserts that this finding contradicts the evidence. Moellering goes to great lengths to separate the December 2, 2009 e-mail and the December 7, 2009 letter. Moellering contends that these two communications represented separate promises that it reasonably relied on.

{¶ 22} Although, at first blush, the language "CenterBank will provide" as used in the e-mail may seem to be a clear promise, the facts and circumstances surrounding this e-mail indicate that this was not an isolated promise, but rather a step in the negotiation process. CenterBank sent the e-mail in response to Moellering's request for "confirmation of a two party check." Even after receiving this e-mail, Moellering admitted that it did not rely on this statement to order the fixtures. Rather, Young stated that he contacted Strotman and requested the written assurance that she offered in the e-mail. "Once I got the letter from the bank, we set up the account." The only reasonable inference from this testimony is that Moellering found that this e-mail alone was not sufficient to process the order. As Moellering did not rely on the statement in the e-mail, it cannot be the basis for its promissory estoppel claim.

{¶ 23} In addition, it is apparent from the testimony and the language used in the December 7, 2009 letter that CenterBank did not make a clear and unambiguous promise to Moellering that it was guaranteeing payment for its work. Moellering requested CenterBank

"confirm" that payment for the work completed by Moellering would be in the form of a two-party check. As requested, CenterBank's letter essentially confirmed that it would not directly pay GBCH for the fixtures installed in the bathrooms and kitchen. Rather, once the work was completed, CenterBank would provide payment in the form of a two-party check payable to GBCH *and* Moellering. The letter simply cannot be interpreted as an unconditional promise by CenterBank to pay Moellering. Rather, the letter's language that "CenterBank will be able to cut a dual check upon completion," merely indicated CenterBank's ability and willingness to pay for the work completed by Moellering on the Nalagatla home through a two-party check, issued to both Moellering and GBCH.

{¶ 24} Even if we consider the language in the e-mail in conjunction with the letter, these statements still only indicate that CenterBank will provide payment, albeit at a later date and at the request of CenterBank's customer, GBCH. Moellering argues that the trial court misconstrued the evidence when it found that GBCH had to authorize the two-party check once Moellering completed its work. Moellering contends that GBCH had already authorized the check as evidenced by GBCH's December 1, 2009 e-mail to CenterBank. However, Young specifically testified that he understood and was aware that Moellering could not unilaterally request a payment, otherwise known as a "draw" in order to be paid for its work. The evidence presented demonstrated that Moellering recognized that even though GBCH had already authorized the two-party check, in order for the bank to ultimately issue a check for the completed work, the request had to come from CenterBank's customer, GBCH.

{¶ 25} Finally, the promise was indefinite and ambiguous in several respects. *See Husted* at ¶ 24. First, the promise was ambiguous as to the manner in which CenterBank would determine the job was "completed." This is evident from the discussions that occurred among CenterBank, Moellering, and GBCH once Moellering believed its work was complete. There was testimony that Moellering only sent final invoices to GBCH. After failing to obtain

payment, Moellering contacted CenterBank and inquired about payment. CenterBank informed Young that it had not yet received paperwork from GBCH and refused to issue the check at that time. Young stated that there was never a discussion with CenterBank as to how they were going to discover that the work was complete. Second, the alleged promise was also ambiguous as to the process by which Moellering was to obtain payment if GBCH refused to authorize the check. Although, Young testified that the purpose of requesting written assurance from CenterBank was to remove GBCH from "having anything to do with whether we got paid or not" it is clear that Moellering's receipt of payment was incumbent upon action by GBCH. As stated earlier, Young recognized that the "draw" request could not come from Moellering; it had to come from GBCH. Young also testified: "Cheri in that letter stated that we would be paid with a dual check upon completion. We completed our end of it. I *assumed* that since CenterBank was also working with Garry Brasch, there would be communication between those two and we would have been paid." (Emphasis added.) As the statements by CenterBank were ambiguous and Moellering's reliance was seemingly based on assumptions and conjectures, CenterBank could not have expected that its statements in either the e-mail or the letter would have induced reliance by Moellering. *See McCroskey* at 30.

{¶ 26} Moellering had the burden to prove that CenterBank's letter was a clear and unambiguous promise or guarantee to pay Moellering. Based on the foregoing, we find that the trial court did not clearly lose its way and create a manifest miscarriage of justice by determining that CenterBank did not make a clear and unambiguous promise to pay Moellering. Moellering, therefore, could not prevail on its promissory estoppel claim. *McCroskey* at 32 (finding it unnecessary to consider the remaining elements required for promissory estoppel where the court finds that no promise was made).

{¶ 27} As there is no indication in the record that the trial court clearly lost its way or

created a manifest injustice in rendering judgment against Moellering on its promissory estoppel claim, its sole assignment of error is overruled.

**{¶ 28}** Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.