**DAILEY, Appellee,**

**v.**

**CRAIGMYLE & SON FARMS, L.L.C., et al., Appellants.**

[Cite as *Dailey v. Craigmyle & Son Farms, L.L.C.*,
177 Ohio App.3d 439, 2008-Ohio-4034.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 07CA856.

Decided July 31, 2008.

Dana N. Whalen, for appellee.

John H. Lawler, for appellant Monty Craigmyle.

---

HARSHA, Judge.

{¶ 1} Monty Craigmyle appeals the trial court's summary judgment finding in Larry Dailey's favor on Craigmyle's counterclaim. Craigmyle alleged that he sold Dailey a used John Deere tractor and later, after the express warranty expired, he paid to repair it, but Dailey then refused to reimburse him. He contends that the trial court erred in denying his motion for summary judgment on his counterclaim, which apparently was based on the theory of detrimental reliance. Specifically, he contends that because the undisputed facts show that he paid to repair the tractor after the warranty expired and Dailey then refused to reimburse him, he is entitled to judgment as a matter of law. Because Craigmyle failed to meet his initial burden of demonstrating that there is no genuine issue of material fact concerning whether Dailey agreed to pay for half of the repairs, he was not entitled to summary judgment on his counterclaim. Accordingly, we overrule his first assignment of error.

{¶ 2} Craigmyle also contends that the trial court erred in failing to address the issue of damages. Because the trial court found in Dailey's favor on his counterclaim, Craigmyle was not entitled to an award of damages. Therefore, his second assignment of error is meritless.

## I. The Facts

{¶ 3} The parties do not dispute the underlying facts. In December 2004, Monty Craigmyle sold Larry Dailey a used John Deere tractor for $27,500 and gave him a verbal warranty: "good for 30 days after the purchase to pay for 50 percent of parts and labor if the work was done in his shop." After the tractor was delivered a few days later, Dailey initially put very little time on it; he pulled it in and out of the barn to make way for a load of hay and drove it to a tire shop for some tire maintenance, for a total running time of about three to four hours. In April 2005, Dailey first put the tractor under a load when he began plowing. Within an hour, the transmission warning light and buzzer started coming on intermittently. He continued to plow, but later stopped and called a local John Deere dealer, Five Points Implement Co., Inc. ("Five Points") to discuss the tractor's condition. Over the next three days, he plowed and disked with the tractor for a total of approximately 12 hours, and he continued to communicate with Five Points about the problem.

{¶ 4} Dailey then called Craigmyle and told him of the tractor's problems. Dailey acknowledged that the 30–day warranty period was up, but indicated that he felt the "trouble was with the tractor when I purchased it." Craigmyle denied that anything was wrong with the tractor when he sold it. He offered suggestions about possible causes, and they had a few subsequent telephone conversations. In the meantime, Dailey had representatives from Five Points come to his farm to look at it. They did some work on the tractor, including removing and rebuilding the "valve body," but determined there was a serious leak in the transmission and did not repair it. Dailey paid $1,841.28 for their work. Dailey then called Craigmyle again and told him of the tractor's transmission problem. During their conversation, Craigmyle indicated that he would "help" him out. However, there was no discussion concerning where the tractor would be repaired or who was going to pay for it. Neither party made any statements to the other that he would pay for half of the repair costs. However, according to Dailey, he believed that Craigmyle would "take care of it" because the tractor had problems with it when he bought it. Craigmyle, however, apparently intended Dailey to pay for half the repairs. Nevertheless, there was no express agreement at that time concerning the repairs and no express understanding about whether the expired warranty would be extended.

{¶ 5} Craigmyle sent his truck to pick up the tractor from Dailey's farm and took it to Foust Equipment in Hagerstown, Indiana for repair. When the driver returned to Dailey's farm to deliver the repaired tractor, he requested Dailey to pay half of the repair cost from Foust Equipment. According to Craigmyle, he did not feel he had any responsibility to Dailey at that time, but he did not intend for Dailey to pay the entire bill because he wanted to "make a customer happy." Initially, Dailey stated that he wanted to test out the tractor, and then after the tractor was unloaded, he asked, "Well, how about if I just pay him in two weeks?" After the driver stated, "[T]hat won't be okay," Dailey refused to pay anything. Craigmyle ultimately paid Foust Equipment the full amount of $3,762.14 for the repairs.

{¶ 6} In June 2005, Dailey filed a complaint against Craigmyle, Craigmyle & Son Farms, L.L.C., and its agent, Rita Craigmyle, alleging that he had detrimentally relied on misrepresentations that Craigmyle had made about the quality and condition of the tractor. Dailey's complaint sought damages in the amount of $1,841.28, the amount he paid Five Points, plus costs and attorney fees. Craigmyle ultimately filed an answer and a counterclaim, which alleged that Craigmyle incurred $400 in transportation costs and $3,762.14 in repair costs for the tractor after the 30–day warranty had expired. He sought judgment in the amount of $4,162.14, plus costs. The trial court denied Craigmyle's motion to challenge venue, granted the motion to dismiss Craigmyle & Son Farms, L.L.C., and its

agent, but concluded that the allegations against Craigmyle "shall be taken under consideration by the court pending further development of this case."

{¶ 7} After some procedural wrangling, the parties then filed cross motions for summary judgment. Each party sought judgment on their own cause of action and on their opponents. Craigmyle sought summary judgment in his favor on his counterclaim and on Dailey's complaint. In the alternative, he requested that the trial court either grant summary judgment on all liability issues, leaving the issue of the amount of damages to be determined or rule on his motion to dismiss previously taken under advisement. Dailey opposed Craigmyle's motion and requested summary judgment in his favor on his complaint and on Craigmyle's counterclaim. However, Craigmyle did not file a response to Dailey's motion. In a judgment entry dated October 23, 2007, the trial court stated:

> This matter came before the Court on Defendant's Motion for Summary Judgment and Plaintiff's response to the Motion and Motion for Summary Judgment.

> The Court finds in favor of Defendant on Plaintiff's Motion of Summary Judgment on the issue of Plaintiff's Complaint for monies expended to repair the tractor.

> The Court finds on behalf of Plaintiff, on Defendant's Motion for Summary Judgment on Defendant's Counterclaim for repairs made by Defendant on Plaintiff's tractor.

> The costs of this action shall be taxed to the deposit. Any additional Court costs shall be split equally between the parties.

{¶ 8} While the wording of the entry is somewhat confusing, given the parties' cross motions for summary judgment on the complaint and the counterclaim, we conclude that the trial court essentially granted Craigmyle's motion for summary judgment on Dailey's complaint and granted Dailey's motion for summary judgment on Craigmyle's counterclaim.[1] The judgment entry did not specify the grounds for the trial court's judgment. Craigmyle now appeals.

## II. Assignments of Error

{¶ 9} Craigmyle raises the following assignments of error.

I. The trial court erred by denying appellant's motion for summary judgment on appellant's counterclaim.

---

1. Craigmyle's motion sought "summary judgment or in the alternative, * * * summary judgment on all liability issues * * *." His request for relief sought "summary judgment against Plaintiff and in favor of Defendant for $3,762.14." We construe his motion to seek summary judgment in his favor in Dailey's complaint and also in his favor on his own counterclaim.

II. The trial court erred by not addressing damages in this matter.

### III. Standard of Review

{¶ 10} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard; we review the judgment independently and without deference to the trial court's determination. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245. Summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. Id. See also *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, and Civ.R. 56(C).

{¶ 11} The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The moving party must inform the trial court of the basis of the motion and must identify those portions of the record that demonstrate the absence of a material fact. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. To meet its burden, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, * * * written stipulations of fact, if any," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); Id. If the moving party satisfies its initial burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher*, 75 Ohio St.3d at 295, 662 N.E.2d 264.

### IV. The Counterclaim

{¶ 12} In his first assignment of error, Craigmyle contends that the trial court erred in denying his motion for summary judgment on his counterclaim, which apparently is based upon the theory of detrimental reliance. He contends that he is entitled to judgment as a matter of law because the undisputed facts show that Dailey contacted him after the warranty had expired to do repairs to the tractor, that he paid for the repairs, and that Dailey then refused to reimburse him. Dailey contends that the trial court properly denied Craigmyle judgment on the counterclaim because the evidence shows that Craigmyle

breached an implied warranty of merchantability and then exercised his right to repair the tractor as Dailey demanded.

[2, 3] {¶ 13} Craigmyle, as the moving party, had the initial burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. We have reviewed Craigmyle's counterclaim and his motion and find that he failed to carry that burden below. His counterclaim does not specifically identify the specific legal theory or basis on which he sought relief. His motion for summary judgment asserts, "Defendant is the one entitled to relief for reasonable detrimental reliance in this case. Defendant's actions in transporting and repairing Plaintiff's tractor are reasonable business practices justified upon reliance that Plaintiff would at least abide by the original express warranty. Here, Plaintiff did not abide by his own bargain." Thus, it appears that the theory of recovery was promissory estoppel.[2]

 {¶ 14} Promissory estoppel is a quasicontractual or equitable doctrine. See *Worthington v. Speedway SuperAmerica L.L.C.*, Scioto App. No. 04CA2938, 2004-Ohio-5077, 2004 WL 2260501. The elements of promissory estoppel require "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State* (1983), 8 Ohio St.3d 29, 30, 8 OBR 339, 456 N.E.2d 1204, citing Restatement of the Law, Contracts 2d (1973), Section 90. In order to prevail on a claim of promissory estoppel, Craigmyle must show a clear and unambiguous promise and reliance by the party to whom the promise is made. The reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance. See *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 437, 674 N.E.2d 731, citing *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035. A promise is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Stull v. Combustion Engineering, Inc.* (1991), 72 Ohio App.3d 553, 557, 595 N.E.2d 504, citing Restatement of the Law, Contracts 2d (1981) 8, Section 2(1). Furthermore, the party who asserts the promissory-estoppel claim bears the burden to prove by clear and convincing evidence all the

---

**2.** As a matter of law, Ohio does not recognize a cause of action for "detrimental reliance." *Carpenter v. Scherer–Mountain Ins. Agency* (1999), 135 Ohio App.3d 316, 733 N.E.2d 1196, fn. 3, citing *Gottfried–Smith v. Gottfried* (1997), 119 Ohio App.3d 646, 650, 695 N.E.2d 1229. Detrimental reliance arises as an element of various causes of action (e.g., promissory estoppel, misrepresentation) but is not a cause of action unto itself. Id. However, based upon the allegations set forth in Craigmyle's counterclaim and the arguments in his motion, it appears that his claim of "detrimental reliance" is actually a cause of action for promissory estoppel.

elements of the claim. *In re Estate of Popov,* Lawrence App. No. 02CA26, 2003-Ohio-4556, 2003 WL 22017299, at ¶ 30. Whether Dailey made "a clear and unambiguous promise" is a question of fact. See, e.g., *McCroskey,* supra; see also *Miller v. Lindsay–Green, Inc.,* Franklin App. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215.

{¶ 15} Based on our review of the evidence, we conclude that Craigmyle failed to meet his initial burden of demonstrating that there is no genuine issue of material fact concerning whether Dailey made a clear and unambiguous promise to Craigmyle that he would pay for half of the repairs. In fact, all of the evidence establishes that Dailey never made any promise to Craigmyle regarding the repair costs. Because Craigmyle failed to meet his initial burden on the threshold element of a promise, we need not consider the additional elements needed for promissory estoppel.

{¶ 16} According to Dailey's deposition testimony, when Craigmyle indicated that he would he would "help him out," he thought Craigmyle was going to "take care of it." Dailey made no promise that he would pay for the repairs and specifically made no promise that he would pay half of the repair bill from Foust Equipment. In fact, he did not even know that Craigmyle was going to take the tractor to Indiana for repairs until Craigmyle's delivery driver came to pick up the tractor. Specifically, Dailey testified:

Q. Okay. And what happened next?

A. He said at that time, he said, "Well, I'll help you out on it." He said, "Have you got and [sic] way of getting here?" He said, "My mechanics are a little slow on work right now," you know, "they've got time that they could take a look at it." I said, "Monty, I don't have no way of hauling this thing. This is too heavy for me." I've got a small trailer and, you know, I don't haul it. And at that time, he told me, he said, "Well, I'll come pick it up." And he said, "We'll take a look at it."

* * *

The next day I think it was, he sent a truck to pick the tractor up. And when they loaded it, the driver told me, he said, "We're taking this to Hagerstown, Indiana, to have it worked on." I said, "Well, I thought Monty said he was going to take it back to his shop." He said, "No, we're taking it to a guy, Mark Foust, In Hagerstown, Indiana, to have it worked on."

{¶ 17} Furthermore, Craigmyle's own deposition testimony shows that when he told Dailey that he would "help him out," there was no express understanding at that time concerning who was going to make the repairs and no discussion concerning who was going to pay for the repairs. Craigmyle testified:

Q. Okay. Did you indicate to Mr. Dailey that you would be taking the tractor to Foust Equipment during your conversation with him?

A. When he called for the repair work and said there was something wrong with it?

Q. Yes.

A. I don't know if I ever told him what we were going to do with it. If I ever told him if we was going to take it? And I might have told him we was going to take it to our place and then I might have changed my mind and decided to take it to Foust.

\* \* \*

After we come to the conclusion that it had problems, we just decided then. I told him that I would help him out and find someplace to get it fixed. I don't remember if I told him I would have it done to be honest with you.

Q. Did Mr. Dailey make any statements to you that he would pay for half of it?

A. No, ma'am.

Q. Did you make any statements to him that you would pay for half of the bill?

A. No ma'am, not at that time.

Q. So your conversation essentially involved Mr. Dailey stating there is a huge problem with the transmission. It's going to cost a lot of money. I feel like you ought to take care of this situation. You said you'd help out. Is that a correct statement of the conversation?

A. Yes, ma'am.

Q. No discussions were had about where it would go, where the tractor would go for repairs, or who would pay the bill?

A. No, ma'am.

{¶ 18} Craigmyle's testimony also shows that the first conversation with Dailey concerning his expectation that Dailey would pay half of the Foust Equipment bill was after the repaired tractor was delivered. Craigmyle testified:

Q. And when did you have a conversation with Mr. Dailey expecting him to pay half of the Foust bill?

A. When the tractor was delivered, I think is actually the first time we ever had a conversation about that.

\* \* \*

Q. What did [the delivery driver] tell you?

A. That Mr. Dailey—when we unloaded the tractor, he—first, when we gave him the bill, he first looked at the bill and then said, "Well," you know, "I would

like time to try this tractor out." And Larry said, "Well, I was instructed to get half the payment when I brought the tractor." And he said, "Well, how about if I just pay him in two weeks?" And Larry said, "No, that won't be okay." And then he said, "Well, I don't think I should owe anything at all." He first acted as if he was going to pay the bill. And then later after instructing to pay it then, said he would not.

{¶ 19} Thus, the evidence fails to show that Dailey made a clear and unambiguous promise to Craigmyle to pay for the repairs and specifically, he made no promise to pay half of the Foust Equipment repair bill. He made no statements prior to the tractor being repaired that could be construed as a manifestation of intention to pay for the repairs, and in fact he did not even know that Craigmyle was taking the truck to Indiana until after they came to pick up the truck. Craigmyle admits that the first conversation about expecting Dailey to pay half of the Foust Equipment bill occurred when they delivered the truck after the repairs. And the only statement by Dailey about paying the bill, i.e., "Well, how about if I just pay him in two weeks," was made after the tractor was delivered. Because it was made after the tractor had already been repaired, Craigmyle could not have possibly relied upon that statement when he decided to take the tractor to Indiana for repairs. Therefore, we conclude that Craigmyle was not entitled to summary judgment on a promissory estoppel claim.

{¶ 20} While it appears based on Craigmyle's motion for summary judgment that the theory of recovery was promissory estoppel, given the allegations in his counterclaim, another possible theory of recovery was unjust enrichment. Like promissory estoppel, unjust enrichment is a quasicontractual theory of recovery. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 11 O.O. 221, 14 N.E.2d 923, paragraph one of the syllabus. Unjust enrichment occurs " 'when a party retains money or benefits which in justice and equity belong to another.' " *Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, at ¶ 30, citing *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 111, 532 N.E.2d 124; *Dixon v. Smith* (1997), 119 Ohio App.3d 308, 317, 695 N.E.2d 284. "Under the doctrine of unjust enrichment (i.e., quantum meruit), a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party." *In re Estate of Popov,* Lawrence App. No. 02CA26, 2003-Ohio-4556, 2003 WL 22017299, at ¶ 26. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. Quantum meruit is the measure of damages

afforded in an action for quasicontract. *Barkan & Robon, Ltd. v. Wise,* Lucas App. No. L–05–1259, 2006-Ohio-2918, 2006 WL 1580044, at ¶ 16, citing Black's Law Dictionary (5th Ed.1981) 1119; see also *Myers v. Good,* Ross App. No. 06CA2939, 2007-Ohio-5361, 2007 WL 2897753, at ¶ 12 ("When a contract fails for a lack of 'meeting of the minds,' equity should be imposed to prevent an unjust enrichment. * * * The proper remedy is quantum meruit, or the value of the benefit conferred on the other party").

{¶ 21} Even if we assume that Craigmyle's counterclaim sets forth a valid claim for unjust enrichment, he has failed to carry his initial burden of establishing that there is no genuine issue of material fact concerning whether he conferred a benefit upon Dailey under circumstances where it would be unjust and inequitable for Dailey to retain the benefit without making payments. Specifically, he failed to show that there was no genuine issue concerning whether under the circumstances it would be unjust and inequitable for Dailey not to reimburse Craigmyle for the costs he incurred in repairing the tractor. Thus, Craigmyle was not entitled to summary judgment on an unjust-enrichment claim. Accordingly, we overrule his first assignment of error.

### V. Damages

{¶ 22} In his second assignment of error, Craigmyle contends that the trial court erred by not addressing the issue of damages. Again, he contends that it is undisputed that he paid for repairs to the tractor after the warranty had expired and that because the invoice amount was never in question, he is entitled to an award against Dailey for $3,762.14. He refers us to comments made by the trial court during a hearing suggesting that he had a quantum meruit argument: "I realize you've got a quantum [meruit] argument, but I'm overruling that also."

{¶ 23} It is axiomatic in Ohio that a court speaks only through its judgment entries. *State ex rel. Indus. Comm. v. Day* (1940), 136 Ohio St. 477, 17 O.O. 86, 26 N.E.2d 1014, paragraph one of the syllabus. While the trial court referred to a possible quantum meruit argument, it also stated that it was rejecting that claim. More important, however, in its judgment entry dated October 23, 2007, the trial court granted judgment in Dailey's favor on the counterclaim. Because we hold that the trial court properly found in Dailey's favor on the counterclaim, Craigmyle was not entitled to an award of damages. Therefore, we overrule his second assignment of error.

Judgment affirmed.

McFarland, J., concurs.

Kline, J., dissents.

KLINE, Judge, dissenting.

{¶ 24} I respectfully dissent. I would dismiss this appeal for lack of a final, appealable order.

{¶ 25} Defendant-appellant Monty Craigmyle moved for summary judgment on his counterclaim only. The court denied his motion. Plaintiff-appellee Larry Dailey moved for summary judgment on both his complaint and Craigmyle's counterclaim. The court denied his motion relative to the complaint only and did not dispose of the motion as it related to the counterclaim. Hence, in my view, the complaint and the counterclaim remain pending.

{¶ 26} Accordingly, I dissent.