[Cite as *Randolph v. Terra State Community College*, 2013-Ohio-5929.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BENJAMIN RANDOLPH

    Plaintiff

    v.

TERRA STATE COMMUNITY COLLEGE

    Defendant

Case No. 2012-04421

Judge Dale A. Crawford

DECISION

{¶ 1} This cause comes to be heard on Defendant's June 3, 2013 Motion for Summary Judgment. On June 19, 2013, Plaintiff filed a response.

{¶ 2} Defendant moves for Summary Judgment as to Plaintiff's claims of age, sex, and disability discrimination in violation of R.C. 4112.02 and promissory estoppel regarding an alleged promise of continued employment with Defendant.[1] Defendant argues that Plaintiff cannot establish claims of sex and age discrimination or that he was "disabled" under R.C. 4112.01(A)(13). Defendant further argues that it had a legitimate non-discriminatory reason for reorganizing its organizational structure and that the non-discriminatory reason was not a pretext for discrimination. Finally, Defendant argues that Plaintiff cannot establish a claim of promissory estoppel based upon an alleged promise by the President of Defendant, Terra State Community College (Terra), and that such a claim cannot be brought against Defendant. In support of its motion,

---

[1] In his memorandum contra, Plaintiff "withdraws" his claims for fraudulent inducement and breach of implied contract.

Defendant attached the affidavits of Jerome Webster and Lisa Williams, along with various exhibits which were attached to the affidavits.

{¶ 3} Plaintiff argues that genuine issues of material fact exist regarding whether Defendant's "reorganization" was a pretext for age, sex, and disability discrimination. Plaintiff further argues that he can establish a claim of promissory estoppel and that such a claim may be brought against Defendant. In opposition to Defendant's Motion for Summary Judgment, Plaintiff attached his own affidavit, the depositions of Marsha Bordner, Lisa Williams, and Jerome Webster along with various exhibits.

**Summary Judgment Standard**

{¶ 4} Under Civ.R. 56(C), summary judgment is proper "if the pleadings, depositions, answer to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, in order to determine whether Defendant is entitled to judgment as a matter of law pursuant to Civ.R. 56(C), the Court must ascertain whether the evidentiary materials presented by Defendant show that there is no genuine issue as to any material fact involved in the case. In making this determination it is necessary to analyze the landmark Ohio Supreme Court decision which addresses the "standards for granting summary judgment when the moving party asserts that the nonmoving party has no evidence to establish an essential element of the nonmoving party's case." *Dresher v. Burt*, 75 Ohio St.3d 280, 285 (1996); *see also Saxton v. Navistar, Inc.,* 10th Dist. No. 11AP-923, 2013-Ohio-352, ¶ 7.

{¶ 5} In *Dresher*, the Ohio Supreme Court held:

{¶ 6} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element

of the nonmoving party's claim. * * * [T]he moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. * * * The assertion must be backed by some evidence of the type listed in Civ.R. 56(C) which affirmatively shows that the nonmoving party has no evidence to support that party's claims." *Dresher, supra,* at 292-293.

{¶ 7} In interpreting the United States Supreme Court decision in *Celotex v. Catrett*, 477 U.S. 317 (1986), the *Dresher* Court found no express or implied requirement in Civ.R. 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Dresher, supra,* at 291-292. Furthermore, the *Dresher* Court stated that it is not necessary that the nonmoving party produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Id.* at 289, quoting *Celotex, supra.* In sum, the *Dresher* Court held that the burden on the moving party may be discharged by "showing"–that is, pointing out to the Court– that there is an absence of evidence to support the nonmoving party's case. *Id.*

{¶ 8} "If the moving party fails to satisfy its initial burden, the motion for summary judgment most be denied." *Id.* at 293. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden as outlined in Civ.R. 56(E):

{¶ 9} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

**Factual Background**

{¶ 10} Plaintiff began working as the Dean for Business, Engineering, and Workforce Development for Defendant, in August 2010. Prior to beginning his employment with Defendant, Plaintiff was interviewed by Marsha Bordner, President of Terra. According to Plaintiff, during the interview, Bordner stated that she would not hire anyone unwilling to remain at Terra for at least three years. Plaintiff assured her that he would remain at Terra at least until August 2014;

{¶ 11} After beginning his employment as an academic dean, Plaintiff reported directly to the Vice-President for Academic Affairs, a position held by Lisa Williams (f.k.a. Jozwiak). As a dean, Plaintiff's duties included identifying budgetary needs, recruiting staff members, developing class schedules, evaluating instructors, reviewing curriculum, and formulating and administering college policies and long rang goals;

{¶ 12} In July 2011, Plaintiff suffered a heart attack, which necessitated the placement of stents in his arteries and a short leave of absence from work. Shortly after returning to work in August 2011, Plaintiff states that current President and former Vice-President for Student and Administrative Affairs, Jerome Webster, made embarrassing and humiliating comments to him regarding the necessity of being prepared for meetings during a meeting of the Council for Academic and Student Affairs. However, Webster did not make any comments regarding Plaintiff's age, sex, or alleged disability;

{¶ 13} In the summer of 2011, Terra officials began considering a reorganization of the academic organizational structure. Webster, avers that in July or August 2011, Bordner raised the issue of reorganizing Defendant's administrative structure. Bordner testified in her deposition that in a small organization, like Terra, when individuals leave through retirement or resignation, it creates an ideal time to look to restructure the organization. According to Bordner, the idea of restructuring first surfaced about a year prior to implementing the actual reorganization. Webster stated that, after the initial idea was raised, discussions and brainstorming ideas to improve Terra continued on a weekly basis. Although there was no definitive plan at the early stage, discussions

focused on ways to better distribute administrative workloads while encouraging enrollment growth. Williams testifies that initial reorganization discussions recognized the growth of the health care field and its impact on Terra;[2]

{¶ 14} In September 2011, Plaintiff missed a board meeting as a result of a death in his family. Plaintiff also missed a building dedication ceremony while representing Terra at an academic conference. According to Plaintiff, after returning to campus from the conference, Williams accused Plaintiff of using poor judgment for attending the conference and not being available on campus. At a subsequent meeting with Bordner and Williams, Plaintiff was again accused of not being available on campus and missing meetings. Plaintiff subsequently filed a complaint with Human Resources alleging sex discrimination and harassment by Williams;[3]

{¶ 15} At a Labor Management Committee Meeting in November 2011, Webster informed the participants about the possibility of academic affairs restructuring as a result of personnel changes and progression toward online classes;

{¶ 16} In December 2011 at a cabinet retreat the first agenda item was to finalize plans for the reorganization. As a part of the reorganization, Terra would eliminate three dean positions and create four new dean positions with restructured academic divisions. According to Webster, the new academic structure would focus on the growth in the health care, entertainment, and hospitality industries in the area as well as provide opportunities for students to pursue business education related to the music and arts programs;

{¶ 17} In February 2012, Bordner announced a reorganization of the academic side of the college. At a meeting announcing the reorganization to the deans, Plaintiff was informed that his position, along with two other dean positions, was being

---

[2]In an affidavit before the Ohio Civil Rights Commission, Williams avers that in the fall of 2011, Terra began considering reorganization because of the continued growth at Terra.
[3]Plaintiff has not asserted a retaliation claim as a result of the filing of the sex discrimination claim.

eliminated. The two other dean positions were held by Sue Kajfasz, who had indicated she wanted to return to faculty status and Nancy Sattler who was retiring in June 2012. Plaintiff's duties were to be divided among several newly-created dean positions. According to Webster, Plaintiff was encouraged to apply for a new dean position at Terra, but he declined to do so;

{¶ 18} In March 2012, shortly after learning of the plan, Plaintiff took a medical leave of absence and did not return to campus. As a result of the reorganization, Plaintiff's employment with Defendant ended June 30, 2012, at the end of the school year. Plaintiff's duties were divided among three newly-hired deans: Andy Carroll, a 38 year-old male, Michael Shirtz, a 33 year-old male, and Beth Hannam, a 39 year-old female. The reorganization was implemented for the Fall 2012 semester.

**Conclusions of Law**

{¶ 19} Plaintiff claims discrimination on the basis of age, sex, and disability in violation of R.C. 4112.02(A), as well as promissory estoppel regarding an alleged promise of continued employment with Defendant.

{¶ 20} R.C. 4112.02 states: "It shall be unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment."

**A) Discrimination on the basis of Age and Sex**

{¶ 21} Inasmuch as the evidentiary standards applicable to discrimination claims based upon age and sex are the same, the Court will jointly analyze Plaintiff's claims. Disparate treatment discrimination has been described as "the most easily understood

type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Teamsters v. United States*, 431 U.S. 324, 335-336 (1977) fn. 15. In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). For example, the "employer may have relied upon a formal, facially discriminatory policy that required adverse treatment" of protected employees, or the "employer may have been motivated by the protected trait on an ad hoc, informal basis." *Id.* "Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.*

{¶ 22} Plaintiff has not presented any direct evidence of age or sex discrimination in this case. Absent direct evidence of discriminatory intent, Ohio Courts resolve such discrimination claims using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Canady v. Rekau & Rekau, Inc.*, 10th Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 22. "Under the *McDonnell Douglas* evidentiary framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. In order to do so, plaintiff must present evidence that: (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position in question and (4) either he was replaced by someone outside the protected class or a non-protected similarly situated person was treated better." (Internal citations omitted.) *Id.* at ¶ 23. If a Plaintiff's position is terminated as a part of a corporate reorganization or workforce reduction, the fourth element of the prima facie case is modified such that Plaintiff must present "additional, direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v.*

*Gencorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990); *see also Wise v. Ohio State University*, 10th Dist. No. 11AP-383, 2011-Ohio-6566, ¶ 9.

{¶ 23} Once a Plaintiff establishes a prima facie case, a presumption of age or sex discrimination is created. The burden of production then shifts to the Defendant-employer to overcome the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. *Allen v. Totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, ¶ 4. "If the employer articulates a nondiscriminatory reason, then the employer has successfully rebutted the presumption of discrimination that was raised by the prima facie case." *Frick v. Potash Corp. of Saskatchewan, Inc.*, 3rd Dist. No. 1-09-59, 2010-Ohio-4292, ¶ 20, citing *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 263 (1st Dist.1995).

{¶ 24} As a general rule, this Court will not substitute its judgment for that of the employer and will not second-guess the business judgment of employers regarding personnel decisions. *Kirsch v. Bowling Green State Univ.,* 10th Dist. No. 95API11-1476 (May 1996). Additionally, in a discrimination case, the Court must examine the employer's motivation, not a Plaintiff's perceptions. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987). Plaintiff is an employee-at-will and can be terminated at anytime for a non-discriminatory reason. *Sutton v. Tomco Machining*, 129 Ohio St.3d 153 (2011). "The cornerstone of this analysis [whether there was discriminatory intent] is whether the employment action is the result of discrimination–not merely whether the action is unfair or the justification questionable." *Price v. Matco Tools*, 9th Dist. No. 23583, 2007-Ohio-5116, ¶ 31. "Even if the reasons are foolish or trivial or even baseless" that fact is not sufficient to justify a finding of discrimination. *Hartley v. Wilson Bell Inc.,* 124 F.3d 887, 890 (7th Cir.1997). Whether a personnel decision was correct is not the issue before this Court. The Court is asked to determine whether age or sex were factors in the decision to terminate Plaintiff's employment.

{¶ 25} Plaintiff, who was 63 years old at the time of termination, has established a prima facie case of both age and sex discrimination.  Plaintiff is a member of a protected class; he suffered an adverse employment action; he was qualified for the position; and his position was eliminated as a part of the reorganization with his duties divided among three newly-created dean positions.  All three newly-hired deans were under the age of 40 and one dean was female.  Additionally, there is no dispute that Defendant's reorganization resulted in the termination of Plaintiff's employment with Defendant.

{¶ 26} Defendant has presented evidence that it had legitimate non-discriminatory reasons for the reorganization and elimination of Plaintiff's position. Indeed, Bordner, Webster, and Williams each assert that Plaintiff's position was eliminated as a part of the academic reorganization.

{¶ 27} Plaintiff argues that Defendant's "reorganization" is nothing more than a pretext for impermissible discrimination.  Once an employer establishes a legitimate, nondiscriminatory reason for the action taken, a Plaintiff must present evidence that an employer's stated justification was a mere pretext for impermissible discrimination. *See Boyd v. Ohio Dept. of Mental Health*, 10th Dist. No. 10AP-906, 2011-Ohio-3596, ¶ 27. To meet his or her burden, a Plaintiff must submit evidence that an employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct.  *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12, citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).  Under any of the three options, a Plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject an employer's explanation and infer that the employer intentionally discriminated against him.  *Knepper, supra,* at ¶ 12, citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003).  "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and the discrimination was the real reason."

*Crase v. Shasta Beverage*, *Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 21; *see also Sells v. Holiday Mgt. Ltd.,* 10th Dist. No. 11AP-205, 2011-Ohio-5974, ¶ 40.

**{¶ 28}** Plaintiff argues that Defendant's shifting rational for the reorganization is evidence of pretext. In support of his position, Plaintiff points to the allegedly conflicting reasons for reorganization offered by Bordner, Williams, and Webster. Plaintiff further argues that his position as a dean necessitated his participation in the reorganization process and that his exclusion from the process is evidence that Defendant was merely working to terminate his employment. However, it is not disputed that none of the three deans participated in the reorganization process.

**{¶ 29}** Based upon the evidence presented by Plaintiff, the Court can only conclude that there is no issue of material fact that the reorganization was anything but legitimate. Indeed, Plaintiff failed to present the Court with any direct or circumstantial evidence that Defendant's reasons for reorganization had no basis in fact, did not actually motivate the reorganization or were insufficient to warrant the reorganization. The only evidence before the Court is that Defendant began planning the reorganization in July or August 2011 and finalized the reorganization in December 2011. The reorganization was announced to the campus in February 2012, implementing the reorganization for the Fall semester 2012. Defendant presented evidence that personnel changes, industry growth, and growth at the college created an ideal time to reorganize the academic structure. There is no dispute that Plaintiff was not involved with the reorganization process and became aware of the reorganization after details had been finalized in December 2011. As a part of that reorganization process, all three deans' positions, including Plaintiff's position, were eliminated. Although Plaintiff was encouraged to apply for a position with Defendant, he did not apply for any of the newly-created positions. The only reasonable conclusion to be drawn from the evidence is that Plaintiff's position was eliminated solely as a result of Defendant's reorganization.

Thus, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims for age and sex discrimination.

### B)   Disability Discrimination

{¶ 30} Plaintiff's claim of disability discrimination in violation of R.C. 4112.02 which is based upon him being subjected to an adverse employment action is likewise analyzed through the burden shifting framework established in *McDonnell Douglas*. Plaintiff can establish a prima facie case for disability discrimination by showing:  (1) that he was disabled; (2) that an adverse employment action was taken at least in part because of the disability; and (3) that he could safely and substantially perform the essential functions of the job despite his disability.  *Turner v. Shahed Enters.,* 10th Dist. No. 10AP-892, 2011-Ohio-4654, ¶ 13. Once a Plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged action*.  Allen, supra.*  If the employer articulates such non-discriminatory reasons, the burden shifts back to Plaintiff produce evidence that the reasons offered by the Defendant were not its true reasons, but were a pretext for discrimination. *Knepper, supra,* at ¶ 12.

{¶ 31} Defendant argues that Plaintiff cannot establish that he was "disabled" under R.C. 4112.01(A)(13).  Plaintiff argues that his heart attack and subsequent placement of stents qualify as a disability.

{¶ 32} Ohio law defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).  The Court notes that "heart disease" is defined as an impairment under R.C. 4112.01(A)(16); however, Plaintiff does not allege that he suffered from "heart disease."  Plaintiff argues that he

suffered a heart attack, which required hospitalization, the placement of stents, and a leave of absence from work to recuperate. Plaintiff has presented the court with no authority expert or otherwise that someone who recovers from a heart attack, with no further heart disease, is disabled under R.C. 4112.01(A)(13).

{¶ 33} Assuming that Plaintiff's heart attack constitutes a physical impairment, such an impairment standing alone, does not necessarily constitute a disability. *See Rongers v. Univ. Hosps. of Cleveland, Inc.,* 8th Dist. No.91669, 2009-Ohio-2137. Temporary impairments, with little or no long-term or permanent impact, are usually not disabilities. *Canady, supra*, at ¶ 33. Thus, Plaintiff's heart attack, standing alone, does not constitute a disability. Plaintiff must demonstrate that his impairment "substantially limits one or more major life activities * * *." R.C. 4112.01(A)(13). An impairment substantially limits a major life activity when the ability of an individual to perform a major life activity is limited compared to most people in the general population. 29 C.F.R. 1630.2(j). Major life activities include eating, walking, breathing, and standing. 29 C.F.R. 1630.2(i). Plaintiff avers that his heart attack has substantially limited major life activities such as running, climbing stairs, walking for a long distance, and eating in that he must now eat a low cholesterol diet. However, Plaintiff has not provided the Court with evidence of how his heart attack substantially limits any major life activities compared with people in the general population.

{¶ 34} Assuming a Court would hold that Plaintiff was "disabled" under R.C. 4112.01(A)(13), as stated above, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff has failed to present the Court with any evidence that Defendant's reason for reorganization had no basis in fact, did not actually motivate the reorganization or was insufficient to warrant the reorganization. Accordingly, there is no genuine issue of material fact that Defendant's reorganization was anything but legitimate. Thus, Defendant is entitled to judgment as a matter of law as to Plaintiff's claim for disability discrimination.

### C)   Promissory Estoppel

{¶ 35} Promissory estoppel is defined as follows: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise."  Restatement of the Law 2d, Contracts, Section 90 (1973); *McCroskey v. State*, 8 Ohio St.3d 29, 30 (1983).  To establish a claim for promissory estoppel, a Plaintiff must prove: "'(1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) the reliance is reasonable and foreseeable, and (4) the party relying on the promise must have been injured by the reliance.'"  *Reif v. Wagenbrenner,* 10th Dist. No. 10AP-948, 2011-Ohio-3597, ¶ 42, quoting *Callander v. Callander*, 10th Dist. No. 07AP-746, 2008-Ohio-2305, ¶ 33.

{¶ 36} Plaintiff states that during the interview prior to being hired, Bordner "questioned whether I would stay at Terra for three years, and told me that she did not want to hire anyone who would not be there for at least three years.  I assured her that my intentions were [to] stay until my normal retirement age of 66, and that I would commit to staying at Terra until at least August 31, 2014."  Plaintiff's affidavit, ¶ 2.  Plaintiff states that he turned down a second interview with Washington State Community College and an interview with North Central Community College in order to accept a position with Defendant.

{¶ 37} The Court notes that it appears that Bordner merely questioned Plaintiff's long-term commitment to employment with Defendant rather than promise a guaranteed three year term of employment.  However, assuming, *arguendo*, Bordner promised Plaintiff that he would be employed for at least three years, such an oral employment agreement is barred by the statute of frauds, which applies to agreements that cannot be performed within one year.  *Olympic Holding Co., L.L.C., v. ACE Ltd.,* 122 Ohio St.

89 (2009); R.C. 1335.05. Moreover, reliance upon such an alleged promise would not be reasonable. Indeed, R.C. 3358.08 vests authority to employ administrative officers with the board of trustees, not the president. It is well-settled that public officers cannot bind the state by acts beyond their authority. *See Drake v. Medical College of Ohio*, 120 Ohio App.3d 493, 495 (10th Dist.1997); *Marbury v. Central State Univ.,* 10th Dist. No. 00AP-597 (Dec. 14, 2000). Likewise, promissory estoppel cannot be applied to contravene statutory authority. *Id.* Therefore, as a matter of law, Plaintiff's alleged three-year employment agreement is within the statute of frauds and is thus unenforceable. Moreover, Plaintiff could not have reasonably relied upon any alleged promise of continued employment with Defendant. Accordingly, the Court finds that Plaintiff's claim of promissory estoppel fails as a matter of law.

{¶ 38} For the foregoing reasons, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment shall be granted.

_____
DALE A. CRAWFORD
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BENJAMIN RANDOLPH

    Plaintiff

    v.

TERRA STATE COMMUNITY COLLEGE

    Defendant

Case No. 2012-04421

Judge Dale A. Crawford

JUDGMENT ENTRY

{¶ 39} A non-oral hearing was conducted in this case upon Defendant's Motion for Summary Judgment. For the reasons set forth in the decision filed concurrently herewith, Defendant's Motion for Summary Judgment is GRANTED and judgment is rendered in favor of Defendant. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

Francis J. Landry               Velda K. Hofacker
Katherine A. Pawlak          Assistant Attorney General
300 Inns of Court Building       150 East Gay Street, 18th Floor
405 North Huron Street          Columbus, Ohio 43215-3130
Toledo, Ohio 43604-1449

003
Filed July 11, 2013
Sent to S.C. Reporter April 30, 2014